UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Marshall Rinkenberger,

Plaintiff,

v.

City of Clearwater,

Defendant.

Civil No. 00-1609 (RHK/RLE)
**MEMORANDUM OPINION AND ORDER**

---

Marshall Rinkenberger, pro se, Clearwater, Minnesota, for Plaintiff.

Julie Fleming-Wolfe, Fleming-Wolfe Law Offices, Saint Paul, Minnesota, for Defendant.

---

## Introduction

Marshall Rinkenberger worked as a volunteer firefighter for the Defendant City of Clearwater ("the City") until early 1998, at which time he was terminated for failing to comply with a requirement that firefighters attend 20% of the runs each quarter. Rinkenberger contends that, because he was disabled and unable to satisfy the run requirement, the City terminated him in violation of the Americans with Disabilities Act ("ADA"). Before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, the Court will grant the City's motion and deny Rinkenberger's motion.



FILED NOV 05 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD NOV 05 2001
DEPUTY CLERK

## Background

Rinkenberger began working for the City as a volunteer firefighter in August 1982. From 1982 through 1996, Rinkenberger fulfilled the duties of his position without incident.[1] In addition to working as a volunteer firefighter, Rinkenberger also operates an automotive repair business with his brother, Murl Rinkenberger.

On February 5, 1997, Rinkenberger fell on the ice and injured his back. Rinkenberger claims that, as a result of this injury, he was unable to attend fire calls. From March of 1997 through the end of the year, Rinkenberger did not participate in any calls. Rinkenberger's chiropractor -- Susan Saetre, D.C. -- put Rinkenberger on medical leave from October 23, 1997 to December 25, 1997 "due to weight and lifting restrictions that would aggravate his injuries." (Sept. 27, 2001 Rinkenberger Aff., Ex. 2 (Letter dated Feb. 11, 1998 from Dr. Saetre).)

Rinkenberger also suffered from depression in 1997. Rinkenberger experienced a number of stresses in his personal life during that year: a conflict between the fire chief and himself, his back injury, the diagnosis and treatment of his brother and business partner for cancer, and the serious respiratory illness of Rinkenberger's sister. (Aug. 29, 2001 Rinkenberger Aff., Ex. 1 (Series of Events).) In the wake of these events, Rinkenberger experienced headaches, dizziness, fatigue and weight loss. (Aug. 29, 2001

[1]In February of 1997, Rinkenberger was put on probation for a conflict between him and the fire chief relating to Rinkenberger's authority to inspect a day care facility as a "fire marshal." (Aug. 29, 2001 Rinkenberger Aff., Ex. 1, p.2-5).

Rinkenberger Aff. Ex. 1 at 5.) Rinkenberger saw Kurt Lemke, M.D., at the Clearwater Clinic on June 3, 1997 to determine the cause of his fatigue and weight loss. Dr. Lemke concluded that Rinkenberger was suffering from stress and depression and recommended Prozac and psychiatric follow-up for Rinkenberger. (Sept. 27, 2001 Rinkenberger Aff., Ex. 2 (Letter dated Feb. 13, 1998 from Dr. Del Giudice).) Rinkenberger decided instead to pursue natural treatment alternatives under the guidance of his chiropractor.

Between the date of his back injury on February 5, 1997 and December 24, 1997, Rinkenberger saw seven different doctors a total of forty-four times. (Sept. 27, 2001 Rinkenberger Aff., Ex.6). Psychologist Tobin Del Giudice examined and interviewed Rinkenberger on February 13, 1998. Dr. Del Giudice concluded that the symptoms Rinkenberger had described as affecting him until the fall of 1997 suggested that he was experiencing a "Major Depressive Disorder" at that time. (Sept. 27, 2001 Rinkenberger Aff., Ex. 2 (Feb. 13, 1998 Statement of Psychological Examination from Dr. Tobin Del Giudice).)

On July 1, 1997, the fire department enacted a new guideline that required volunteer firefighters to attend a minimum of 20% of the fire calls each quarter.[2] If a firefighter failed to meet the quota during a given quarter, he would receive a warning and

---

[2] The policy was first discussed at the June 11, 1997 city council meeting. The guideline went into effect on July 1, 1997. The fire department meeting minutes show that the 20% attendance requirement was passed as a bylaw on May 13, 1998 -- more than two months after Rinkenberger's termination was upheld by the City Council. (Pl. Aff. Ex. 5 meeting minutes, Pl. Aff. Ex. 3 Fire Department By-Laws - including by-law amendment procedure).

would be told that he was expected to fulfill the 20% quota for the following quarter. If the firefighter failed to satisfy the quota for two quarters in a row, he would be terminated. (Fleming-Wolfe Aff., Ex.3. (Firefighter Run Quota).) The run quota policy also contains a provision regarding those who, for medical reasons, cannot fulfill the run quota:

> Any firefighter who can not respond to calls because of a medical condition or doctor's orders will not be required to meet the 20% run count for that quarter. The following quarter, they will be placed on probation and required to make the 20%. If the firefighter can not make the 20% during the probation period, the condition shall be considered chronic and that firefighter will resign or their membership will be terminated. That firefighter may reapply for membership on the department when a medical release is presented to the chief or [assistant] chief.

Id.[3] Rinkenberger took a "self-directed medical leave" from July 25, 1997 to end of December 1997. (Sept. 27, 2001 Rinkenberger Aff., Ex. 2, Letter dated Feb. 13, 1998 from Dr. Del Giudice).)

On October 2, 1997, Rinkenberger was notified that he failed to meet the quota for third quarter. (Aug. 29 Rinkenberger Aff., Ex. 1 at 6) On January 3, 1998, Rinkenberger was informed that he had been terminated by the fire department for failing to meet the 20% run response requirement for two quarters in a row. (Aug. 29 Rinkenberger Aff., Ex. 1 at 7). Rinkenberger appealed his termination to the Clearwater City Council. The City Council told Rinkenberger to submit documentation of a medical disability for the

---

[3] In 1997, the fire department had no written medical policy requiring employees to report medical conditions to the Fire Department or the City of Clearwater.

first and second quarters of 1997. (Fleming-Wolfe Aff., Ex. 8, p.2, Clearwater City Council minutes for Jan. 26, 1998 meeting).

Rinkenberger, however, presented information relating to his medical condition during the third and fourth quarters of 1997. Rinkenberger submitted letters from Dr. Saetre, Dr. Lemke, and Dr. Del Giudice. (Sept. 27, 2001 Rinkenberger Aff., Ex. 2.) These letters further indicated that Rinkenberger was physically and mentally able to return to work as a volunteer firefighter as of January 1, 1998.

The City Council rejected Rinkenberger's evidence of medical disability and affirmed his termination. Rinkenberger filed a writ of certiorari regarding the City Council's actions with the Minnesota Court of Appeals. Following an August 1998 hearing, the Court of Appeals determined that there was no violation of due process in this case. Rinkenberger obtained a right to sue letter from the Minnesota Department of Human Rights. In his position as a volunteer firefighter, Rinkenberger earned between $500 and $600 per year and was accruing pension benefits. At the time of his termination, he was partly vested in pension benefits "that could be worth upward of $25,000." (Complaint ¶12).

## Analysis

### I. Standard of Decision

Summary judgment is proper if, viewing the record in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The court must view the evidence, and the inferences which may be reasonably drawn from it, in the light most favorable to the nonmoving party. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).

The nonmoving party may not rest on mere allegations or denials, but rather must demonstrate the existence of specific facts that create a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). The court does not weigh facts or evaluate the credibility of affidavits and other evidence on a motion for summary judgment. See Liberty Lobby, 477 U.S. at 249. The nonmovant, however, cannot avoid summary judgment in favor of the movant merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to be in dispute must be "outcome determinative under prevailing law," that is, it must be material to an essential element of the specific theory of recovery at issue. See Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992).

## II. Disability Discrimination

The ADA prohibits employers from discriminating "against a qualified individual

with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, . . . and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). To establish a claim under the ADA, Rinkenberger must show that (1) he has a disability within the meaning of the Act; (2) he is qualified to perform the essential functions of the job either with or without accommodation; and (3) he has suffered an adverse employment action because of the disability. See Webner v. Titan Distribution, Inc., No. 00-2941, 2001 WL 1182354 (8th Cir. Oct. 9, 2001); Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 948 (8th Cir. 1999). The Court begins with whether Rinkenberger has a "disability."

**A. Establishing a "Disability"**

The ADA defines a "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). The EEOC has promulgated regulations that provide further guidance in interpreting and applying the three main components of the term "disability": "physical or mental impairment," "substantially limits," and "major life activities." See Sutton v. United Air Lines, 527 U.S. 471, 479-80 (1999) (discussing 29 C.F.R. § 1630.2(h)-(j)). The regulations state that a "physical impairment" includes

> [a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1). A "mental impairment" includes "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). The EEOC construes the phrase "substantially limits" to mean that the person is

> (i) <u>unable to perform</u> a major life activity that the average person in the general population can perform; or
>
> (ii) <u>[s]ignificantly restricted as to the condition, manner, or duration under which an individual can perform</u> a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (emphasis added). Lastly, the regulations provide that "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Rinkenberger does not claim that he has <u>a record</u> of a physical or mental impairment that substantially limits one or more major life activities. Nor does he contend that he has been <u>regarded as</u> having such an impairment when, in fact, he does not. The question Rinkenberger's case presents is whether he in fact had "a physical or mental impairment that substantially limits one or more . . . major life activities."

Rinkenberger has identified two impairments that he claims constituted an actual disability -- his back injury and depression. The Court considers each in turn.

**(1) Back injury**

The City argues that Rinkenberger's back injury was not substantially limiting because it was temporary. Rinkenberger injured his back in February 1997. He informed the City Council during his appeal that he was physically fit and able to return to work as a firefighter as of January 1998. The duration of his claimed impairment was, at most, eleven months.

The EEOC has identified three factors to be considered in evaluating whether a person is "substantially limited" in a major life activity: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2) (emphasis added). Thus, to constitute a disability under the ADA, "[o]nly a permanent or long-term condition will suffice." Mellon v. Federal Express Corp., 239 F.3d 954, 957 (8th Cir. 2001); see also Heintzelman v. Runyon, 120 F.3d 143, 145 (8th Cir. 1997) ("Statutory disability requires permanent or long-term limitations."); 29 C.F.R. app. § 1630.2(j) (providing that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza.").

There is no evidence to suggest that Rinkenberger's 1997 back injury has had or will have a "permanent or long-term impact" on Rinkenberger's ability to perform a major life activity. Both Rinkenberger and his chiropractor informed the City Council that, as of January 1998, his back had healed sufficiently to permit him to return to work as a firefighter. The Court concludes that no reasonable jury could find that Rinkenberger's back injury constituted a permanent or long-term limitation on his ability to perform a major life activity.[4]

**(2) Depression**

At the hearing on the summary judgment motions, Rinkenberger described the

---

[4] When asked what major life activity Rinkenberger claims to have been limited in as a result of his back injury, he identified the ability to work as a volunteer firefighter. In the context of the major life activity of working, the phrase "substantially limits" means

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i) (emphasis added). Rinkenberger presented evidence that his chiropractor placed him on medical leave during the fourth quarter of 1997due to weight and lifting restrictions. As the Eighth Circuit recently concluded, "[w]hile a lifting restriction standing alone is insufficient to demonstrate that [the plaintiff] was substantially limited in the life activity of working, the inability to lift heavy objects can translate across a broad spectrum of physically demanding jobs." Webner v. Titan Distribution, Inc., 2001 WL 1182354 (8th Cir. Oct. 9, 2001). Given that Rinkenberger's back injury was not a substantial limit on a major life activity from a durational standpoint, we need not address whether a jury could reasonably find that his back injury limited him in the major life activity of working.

episode of depression he suffered during the summer and fall of 1997. Rinkenberger attributed his depressed state to a number of factors, including his dispute with the fire chief over the "fire marshal" incident, his brother's (and business partner's) battle with cancer, and his sister's health problems. Rinkenberger told the Court that, as a result of his depression, there were days when he simply could not get out of bed to go to work. On other occasions, he would go to his and his brother's shop and help out with small projects but would not handle major tasks he typically performed as a co-owner of the business. Rinkenberger stated that, while suffering from depression, he could participate on fire runs due to the stress he found associated with that environment.

As with his back injury, Rinkenberger's claim of a disability based upon his depression does not satisfy the legal requirements that his impairment be of a significant duration and have a "permanent or long-term impact" on his ability to perform a major life activity. Rinkenberger manifested symptoms of depression in the spring of 1997. In February 1998, Dr. Del Giudice found that Rinkenberger was not suffering symptoms of a depressive disorder and concluded that, based upon Rinkenberger's description of his mental state, he had experienced a major depressive disorder "until the fall of 1997." At the hearing on the summary judgment motions, Rinkenberger indicated that he had recovered from the episode of depression by the time he sought reinstatement in January 1998. There is no evidence in the record tending to establish that Rinkenberger's depression was of a duration of longer than seven or eight months or that the depression

he suffered in 1997 has had a permanent or long term impact upon his ability to perform a major life activity. Accordingly, the Court concludes that Rinkenberger did not have a "disability," as that term is defined by the ADA and the regulations and case law construing that term. The Court will grant summary judgment to the City on Rinkenberger's claim of disability discrimination.

## Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that

1. Defendant City of Clearwater's Motion for Summary Judgment (Doc. No. 36) is **GRANTED**;

2. Plaintiff Marshall Rinkenberger's Motion for Summary Judgment (Doc. No. 33) is **DENIED**; and

3. Plaintiff Rinkenberger's Complaint is hereby **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 5, 2001

RICHARD H. KYLE
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995